**Slip Op. 03-12**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                       :
FAG ITALIA S.p.A. and FAG BEARINGS     :
CORPORATION; SKF USA INC. and          :
SKF INDUSTRIE S.p.A.,                   :
                                       :
        Plaintiffs and                 :
        Defendant-Intervenors,         :
                                       :
        v.                             :
                                       :   Consol. Court No.
UNITED STATES,                         :   97-11-01984
                                       :
        Defendant,                     :
                                       :
        and                            :
                                       :
THE TORRINGTON COMPANY,                :
                                       :
        Defendant-Intervenor          :
        and Plaintiff.                 :
                                       :
_____:

[Commerce's <u>Remand Results</u> are affirmed. Case dismissed.]

        <u>Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP</u> (<u>Max F. Schutzman</u>, <u>Andrew B. Schroth</u>, <u>Mark E. Pardo</u> and <u>Adam M. Dambrov</u>) for FAG Italia S.p.A. and FAG Bearings Corporation, plaintiffs and defendant-intervenors.

        <u>Steptoe & Johnson LLP</u> (<u>Herbert C. Shelley</u>, <u>Alice A. Kipel</u> and <u>Anne Talbot</u>) for SKF USA Inc. and SKF Industrie S.p.A., plaintiffs and defendant-intervenors.

        <u>Robert D. McCallum, Jr.</u>, Assistant Attorney General; <u>David M. Cohen</u>, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Lucius B. Lau</u> and <u>Reginald T. Blades, Jr.</u>); <u>David R. Mason Jr.</u>, Office of the Chief Counsel for Import Administration, United States Department of Commerce (of counsel: <u>Elizabeth Cooper Doyle</u>), for the United States, defendant.

        <u>Stewart and Stewart</u> (<u>Terence P. Stewart</u> and <u>Geert De Prest</u>) for The Torrington Company, defendant-intervenor and plaintiff.

                                        Dated: January 30, 2003

**JUDGMENT**

## I.   Standard of Review

The Court will uphold Commerce's redetermination pursuant to the Court's remand unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

## II.   Background

On August 7, 2002, this Court issued an order directing the United States Department of Commerce, International Trade Administration ("Commerce"), to explain "why [Commerce] uses a different definition of 'foreign like product' for price-based calculations for normal value ["NV"] than [Commerce] does for calculations of constructed value ["CV"]." FAG Italia, S.p.A. v United States ("FAG Italia III"), 26 CIT ___, ___, Ct. No. 97-11-

01984, 2002 WL 1818086, at *1 (CIT Aug. 7, 2002) (citation omitted). This order was mandated by the decision of the Court of Appeals for the Federal Circuit ("CAFC") in FAG Italia S.p.A. v. United States ("FAG Italia II"), 291 F.3d 806 (Fed. Cir. 2002), vacating-in-part the judgment of this Court in FAG Italia S.p.A. v. United States ("FAG Italia I"), 24 CIT ___, 2000 WL 978462 (CIT July 13, 2000). The CAFC based its decision in FAG Italia II on its prior holding in SKF USA Inc. v. United States, 263 F.3d 1369 (Fed. Cir. 2001). The administrative determination, at issue in FAG Italia I, FAG Italia II and subject to the order of FAG Italia III, is entitled Amended Final Results of Antidumping Duty Administrative Reviews of Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden and the United Kingdom ("Final Results"), 62 Fed. Reg. 61,963 (Nov. 20, 1997).

On November 7, 2002, Commerce, pursuant to this Court's order in FAG Italia III, submitted its Final Results of Redetermination Pursuant to Court Remand ("Remand Results").[1] In particular, Commerce: (1) set forth the pertinent factual background of its (a) model-match process, and (b) constructed value ("CV") profit

---

[1] Prior to the final Remand Results, Commerce released the draft results of redetermination on October 17, 2002. FAG Italia S.p.A. and FAG Bearings Corporation ("FAG") and SKF USA Inc. and SKF Industrie S.p.A. ("SKF") submitted comments to draft Remand Results on October 29, 2002, and October 30, 2002, respectively.

methodology; (2) explained its application of the term "foreign like product," in addition to addressing the contentions raised by FAG regarding this term; and (3) explained why its CV profit methodology comports with statutory requirements.

On December 6, 2002, FAG filed comments to the Remand Results with this Court. Commerce and The Torrington Company ("Torrington") later submitted rebuttal comments on December 20, 2002. SKF has not submitted any formal comments to this Court.

## III. Contentions of the Parties

FAG contends that Commerce failed to comply with FAG Italia II and FAG Italia III because Commerce did not supply the Court with a reasonable explanation regarding Commerce's use of differing definitions of the term "foreign like product" in its CV profit and NV price-based calculations.

Relying on the CAFC's holding in SKF USA, 263 F.3d at 1382-83, FAG argues that Commerce must overcome a strong presumption that the same definition of the term "foreign like product" be employed throughout the same antidumping proceeding. FAG interprets the CAFC's holding to mean that Commerce, in order to successfully overcome this presumption, must provide an explanation that is "completely novel." FAG attacks several arguments made by Commerce in the Remand Results in an attempt to show that Commerce has not

met its burden to provide a reasonable explanation regarding its use of differing definitions for the same statutory term.

FAG first raises issue with Commerce's argument that employing an identical definition of "foreign like product" for both NV and CV profit calculations will render the preferred method for calculating CV, found under 19 U.S.C. § 1677b(e)(2)(A) (1994), inapplicable. FAG asserts that this argument is flawed because Commerce is restricted in choosing comparison sales that are contemporaneous when calculating NV; a requirement that is not imposed on Commerce when calculating CV profit. Accordingly, sales of the foreign like product exist upon which Commerce can base its CV profit calculation.

Second, FAG attacks Commerce's contention that the use of aggregate foreign like products for the viability test conducted under 19 U.S.C. § 1677b(a)(1)(C) (1994) justifies Commerce's application of different definitions for the same statutorily defined term. According to Commerce, the statute, on its face, is concerned with aggregate amounts of the foreign like product. Therefore, Commerce's argument that the phrase "aggregate quantity" does not authorize Commerce to calculate an aggregate of foreign like products defies logic and should be rejected. FAG, using analogous logic, rejects Commerce's explanation of its country-wide below cost sales test and urges the Court to do the same.

Third, FAG argues that the contemporaneity rule, under 19 U.S.C. § 1677b(a)(1)(A) (1994),[2] has no bearing on Commerce's use of the same definition of "foreign like product." According to FAG, the specific language distinguishing a time element in the contemporaneity rule does not appear in any statutory definition of the term "foreign like product" under 19 U.S.C. § 1677(16) (1994) and, therefore, Commerce cannot read such a requirement into the statute. Moreover, FAG contends that Commerce's current methodology for calculating CV profit does not accord to any contemporaneity requirement, although Commerce implies so in the Remand Results.

Commerce responds that it has met the mandate set out by the CAFC in FAG Italia II, providing reasonable explanations why Commerce uses different definitions of the same term when calculating NV and CV profit. See Def.'s Rebuttal Comments Regarding the Remand Results Pursuant to Ct. Remand at 1-2. Commerce contends that the Court must decide whether Commerce reasonably interpreted the antidumping statute with regards to implementing differing definitions of the same term in the same proceeding, and that the issue is one of weighing the statute's

---

[2]     The contemporaneity rule states that "[t]he normal value of the subject merchandise shall be the price described in [19 U.S.C. § 1677b(a)(B)], at a time reasonably corresponding to the time of the sale used to determine export price or constructed export price under [19 U.S.C. § 1677a(a) or (b)]." 19 U.S.C. § 1677b(a)(1)(A).

legislative history and the factual context in which the statute was applied. According to Commerce, FAG presents a criticism of Commerce's explanations without evidence supporting that such explanations were, in fact, unreasonable. See id. at 5. Commerce also offers further explanations to show how the viability provision and country-wide cost allegation validate Commerce's use of differing definitions of the term "foreign like product." See id. at. 6-9.

Torrington generally agrees with Commerce and considers the arguments presented by FAG unconvincing. According to Torrington, the CAFC in FAG Italia II did not find Commerce's statutory interpretation unreasonable, but instead required Commerce to provide further explanation. See Rebuttal Comments of Torrington at 5. Torrington asserts that Commerce provided such explanations. See id.

IV. Analysis

The CAFC in FAG Italia II, 291 F.3d at 808, followed its prior holding in SFK USA, 263 F.3d at 1382, regarding the issue of whether "[Commerce] properly defined 'foreign like product' for purposes of 19 U.S.C. §§ 1677b(a)(1) and 1677b(e)." FAG Italia II, 291 F.3d at 808. The CAFC has held that since Congress used the term "foreign like product" in various sections of the antidumping

statute and specifically defines the term in 19 U.S.C. § 1677(16),

it is

> presume[d] that Congress intended that the term have the same meaning in each of the pertinent sections or subsections of the statute, and . . . that Congress intended that Commerce, in defining the term, would define it consistently. Without an explanation sufficient to rebut this presumption, Commerce cannot give the term "foreign like product" a different definition (at least in the same proceeding) when making the [NV] price determination and in making the constructed value determination. This is particularly so because the two provisions are directed to the same calculation, namely, the computation of normal value (or its proxy, constructed value) of the subject merchandise.

SKF USA, 263 F.3d at 1382. In SKF USA, the CAFC concluded that

Commerce failed to explain its justification for the inconsistent

use of the term "foreign like product" and outlined the explanation

that Commerce must provide to properly rebut the presumption that

Commerce cannot use differing definitions for an identical term in

the same proceeding. See SKF USA, 263 F.3d at 1382-83. In

accordance with the CAFC's decisions on this issue in SKF USA and

FAG Italia II, this Court ordered Commerce to explain its

methodology for the calculation of CV profit and explain why the

methodology comported with statutory requirements. See FAG Italia

III, 26 CIT at ___, 2002 WL 1818086 at *1.

In the Remand Results, Commerce explained its unique model-

matching methodology and reporting requirements of sales

transactions used in Commerce's calculation of NV. Commerce

explained that if it was "unable to find a sale of a comparison-

market model made in the ordinary course of trade that is identical to or shares the family designation of the [United States] sale at a time reasonably corresponding to the time of the [United States] sale, [Commerce then] resort[s] to CV." Remand Results at 8. Commerce detailed its calculation of CV, which Commerce derived by adhering to 19 U.S.C. § 1677b(e), and later explained why Commerce "interpreted and applied the statutory term 'foreign like product' more narrowly in its [calculation of NV] than in its calculation of [CV] . . . under [19 U.S.C. § 1677b(e)(2)(A)] . . . ." Id. at 10.

According to Commerce, the preferred method for calculating CV, found in 19 U.S.C. § 1677b(e)(2)(A), is to be used unless "there are no home market sales of the foreign like product or because all such sales are at below-cost prices." Id. at 11 (citation omitted). Commerce can use the preferred methodology only if sales of the foreign like product exist that are within the ordinary course of trade. See 19 U.S.C. § 1677b(e)(2)(A). Title 19 of the United States Code and the Statement of Administrative Action ("SAA")[3] establish that only when "no above-

---

[3]  The SAA represents "an authoritative expression by the Administration concerning its views regarding the interpretation and application of the Uruguay Round agreements." H.R. Doc. 103-316, at 656 (1994), reprinted in 1994 U.S.C.C.A.N. 4040. "[I]t is the expectation of the Congress that future Administrations will observe and apply the interpretations and commitments set out in this Statement." Id.; see also 19 U.S.C. § 3512(d) (1994) ("The statement of administrative action approved by the Congress . . .

(continued...)

cost sales [exist] in the ordinary course of trade in the foreign market under consideration will Commerce [then] resort to [CV]." SAA at 833 (emphasis in original).  Accordingly, Commerce argues that if it were to use the same definition of the term "foreign like product" for the NV and CV profit calculations, it would eliminate all sales of the foreign like product upon which to base the CV profit calculation and would mandate that Commerce use one of the alternative methods listed under 19 U.S.C. § 1677b(e)(2)(B)(i) through (iii) to calculate CV.  See Remand Results at 11; see also SKF USA, 263 F.3d at 1376-77.  Commerce explained that this outcome is common in every situation where foreign like product is interpreted in the same manner for both price and CV profit determinations.  See Remand Results at 12. Thus, "under a rigidly uniform interpretation of the term 'foreign like product,' the preferred methodology for calculating CV-profit would never be applied in any case."  Id.

Commerce further explains that differing categories of merchandise can satisfy the meaning of the term "foreign like product," depending on the specific facts of each antidumping proceeding, and illustrates this point by explaining its usual

---

(...continued)
shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application").

practice of deriving different values, including NV. See id. at 12-15. In determining the viability of a comparison market for NV under 19 U.S.C. § 1677b(a)(1)(C), Commerce adds that it normally employs the definition of the term "foreign like product" provided under § 1677(16)(C). See id. at 15-18. To find foreign like products that would fit into the definition provided under § 1677(16)(A) (identical products versus products of the "same general class or kind"), and to use such products in its viability determination would require Commerce to perform a "product-specific matching analysis, and other analyses," requiring data not yet available to Commerce. See id. at 16. The SAA makes clear that "Commerce must determine whether the home market is viable at an early stage in the [antidumping] proceeding to inform exporters which sales to report." SAA at 821. Commerce poses a similar argument when explaining its normal practice of calculating whether reasonable grounds to believe or suspect below cost sales exist under 19 U.S.C. § 1677b(b)(2)(A)(i) (1994), and adds that it defines the term "foreign like product" consistently in determining CV profits. See Remand Results at 18-20.

Contrary to the contentions espoused by FAG, the Court finds that the Remand Results provide sufficient explanation to rebut the presumption that Commerce cannot use differing definitions for an identical term in the same proceeding. Commerce adequately explained why the differing use of the same term is necessary to

establish NV and CV profit in the same antidumping proceeding. Commerce set out the factual background of its calculations and provided the Court with an adequate and reasonable explanation of why the methodology at issue enables it to comply with the statute on a whole. Accordingly, Commerce followed the mandate of <u>FAG Italia III</u>.

**V.    Conclusion**

The Court finds that Commerce sufficiently met its burden to explain why a differing definition of the term "foreign like product" is used in calculating NV and CV profit for FAG. Therefore, having reviewed the <u>Remand Results</u>, it is hereby

**ORDERED** that the <u>Remand Results</u> are affirmed in their entirety, and it is further

**ORDERED** that since all other issues have been decided, this case is dismissed.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated:     January 30, 2003
           New York, New York

## Erratum

Slip Opinion 03-12

<u>FAG Italia S.p.A. v. United States</u>, Consol. Court No. 97-11-01984

 On page 2, the heading "**<u>JUDGMENT</u>**" should be replaced with the heading "**<u>ORDER</u>**".

February 5, 2003.